# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CHARLES W. HUDSON, JR., )
)
               Plaintiff, )
v. ) Case No. CIV-10-363-FHS-SPS
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
               Defendant. )

## REPORT AND RECOMMENDATION

The claimant Charles W. Hudson, Jr. requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 13, 1995, and he was forty-four years old at the time of the administrative hearing. He has an eleventh grade education and past relevant work as a derrick hand, welder, and automotive mechanic. (Tr. 25, 41). The claimant alleges he has been unable to work since January 22, 2004 because of heart attacks, a head injury, sleep apnea, high blood pressure, high cholesterol, congestive heart failure, three brain surgeries, and blocked arteries. (Tr. 150).

## Procedural History

On July 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Osly F. Deramus conducted a hearing and determined that the claimant was not disabled in a decision dated September 21, 2009. The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (seizure disorder, heart disease, and affective mood

disorder) but retained the residual functional capacity ("RFC") to perform work sedentary work as defined in 20 C.F.R. § 404.1567(a). However, the ALJ limited the claimant to never climbing ladders and avoiding exposure to heights and dangerous moving machinery and added that claimant can only perform work which required him to perform only simple tasks with routine supervision, relate to peers and supervisors on a superficial basis, and avoid contact with the general public. (Tr. 20). The ALJ concluded that while the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, touch up screener. (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the medical evidence of record; (ii) by failing to perform a proper step three analysis; (iii) by failing to properly analyze his RFC at step four; and (iv) by failing to properly analyze his credibility. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The claimant underwent an ENG in November 2007, which ultimately revealed a "nonlocalizing abnormality" which prompted a referral back to a specialist at what is denoted in the records as "the Balance Center." (Tr. 272). On December 3, 2007, based on his family's reports of "episodes of what sounds like partial seizure where he is unresponsive," the claimant's treatment notes reflect that doctors at the Otologic Medical Clinic wrote that the claimant was to "talk with his primary physician . . . about a

neurology consultation." (Tr. 278). On January 9, 2008, Dr. Michael Tribbey, M.D. of The Medical Neurologists, Inc. wrote that a review of the claimant's EEG showed "some subtle changes in the left parietal and posterior temporal region of the brain, which suggest an area of previous damage and possible epileptic behavior." (Tr. 281). Dr. Tribbey then prescribed Dilantin and stated that claimant was not to drive until he had been event free for six months. (Tr. 281). The claimant received treatment from Valley View Regional Hospital's emergency room on January 23, 2008 for vertigo and headaches. On April 11, 2008, the claimant again visited Dr. Tribbey, who noted that claimant had missed two doses of Dilantin and he had visited the emergency room because of seizure activity. (Tr. 316). On March 31, 2008, April 28, 2008, and June 9, 2008, the claimant apparently presented to the Valley View Emergency Room for treatment for his seizures. (Tr. 571, 578, 594).

On March 18, 2008, state reviewing physician Dr. Kenneth Wainner, M.D. completed a Physical Residual Functional Capacity Assessment. Dr. Wainner opined that claimant could occasionally lift and/or carry up to 20 pounds, frequently lift and or carry 10 pounds, stand and/or walk for six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and engage in unlimited pushing and/or pulling. (Tr. 306). Further, Dr. Wainner additionally opined that claimant should avoid climbing ladders, ropes, scaffolds, and hazards (such as machinery and heights). (Tr. 307, 309).

The claimant apparently began receiving treatment from Dr. Patrick O'Neill on August 11, 2008. During that visit, Dr. O'Neill's notes reveal that the claimant

complained of a history of congestive heart failure, epilepsy, sleep apnea, and restless leg syndrome, noting that he had experienced swelling in his legs for about 3 months. (Tr. 363). At that time, the claimant was diagnosed with coronary artery disease, epilepsy, congestive heart failure, and anxiety. (Tr. 363). On October 3, 2008, the claimant sought treatment from Dr. O'Neill for shortness of breath that had persisted for 2-3 weeks, shaking in his hands, and a reported seizure in September. The assessment at that time was asthma, chronic obstructive pulmonary disorder, and bipolar syndrome. (Tr. 395). On June 9, 2009, Dr. Patrick O'Neill completed a Medical Source Statement – Physical on claimant's behalf.

Regarding mental health impairments, the claimant was examined by state consultative physician Dr. Everett Bayne, M.D. on September 25, 2007. During the examination, Dr. Bayne noted that the claimant complained of an inability to handle stress, overall decreased interest level, poor energy, and poor focus and concentration. Dr. Bayne diagnosed the claimant with major depression, recurrent, secondary to chronic illness and assessed his level of functioning (or GAF) to be 50. (Tr. 243). Further, Dr. Bayne opined that the claimant was unemployable. (Tr. 243).

State reviewing physician Dr. Carolyn Goodrich, Ph.D. completed a Psychiatric Review Technique on November 1, 2007. Dr. Goodrich found that claimant suffered from affective disorders, characterized by a disturbance of mood accompanied by depressive syndrome. Within that finding, Dr. Goodrich noted that claimant's symptoms included anhedonia or pervasive loss of interest in almost all activities, appetite

disturbance with change in weight, decreased energy, and difficulty concentrating or thinking. (Tr. 248). Dr. Goodrich also found that the claimant was moderately limited in the following categories: 1) restriction of activities of daily living; 2) difficulties in maintaining social functioning; and 3) difficulties in maintaining concentration, persistence, or pace, and she diagnosed claimant with major depression, recurrent, secondary to chronic illness. (Tr. 255, 257). Finally, Dr. Goodrich completed a Mental Residual Functional Capacity Assessment in which she found that claimant was markedly limited in the following categories: 1) the ability to understand and remember detailed instructions; 2) the ability to carry out detailed instructions; and 3) the ability to interact appropriately with the general public. (Tr. 259-60).

The ALJ apparently rejected the idea that Dr. O'Neill qualified as a treating physician under the "treating physician rule." (Tr. 25) ("[T]here is no indication that any treating physician has made a determination or recommendation regarding the claimant's residual functional capacity."). Further, the ALJ assigned "very little weight" to Dr. O'Neill's opinion because it was "not supported by diagnostic testing or his own examination of the claimant." (Tr. 23). One of the reasons cited by the ALJ for discounting Dr. O'Neill's findings is that in treatment notes, Dr. O'Neill noted that claimant was "on/off" his seizure medications. (Tr. 24). Further, when discussing the treatment notes of Dr. Michael Tribbey, a neurologist, the ALJ cited the claimant's noncompliance with medication (as evidenced by notes indicating his Dilantin level was low), and stated that "[t]here is no evidence in the record that the claimant sought further

specialist care for seizure disorder, there is no evidence of complaint of frequent seizures, and there is no record that he required emergency room treatment due to a severe seizure event." (Tr. 24).

The problem with this discussion regarding the severity of claimant's seizure disorder and the impact it has on the claimant's ability to work is that much of what the ALJ says is not actually supported by the record. First, the claimant testified at the administrative hearing that the claimant has been noncompliant with treatment because he "can't always afford them so [he] may have to go four or five days and - - without taking them" and also testified that he had no medical insurance. (Tr. 46). The ALJ also faulted the claimant for failing to seek *further* specialist care for his seizure disorder *after* seeking treatment from Dr. Tribbey, who is a neurologist. (Tr. 24). Similarly, the ALJ gave very little weight to the opinion of state consultative examiner Dr. Everett Bayne, because the claimant was not on Paxil even though the claimant reported previously responding well to that medication. (Tr. 25). The ALJ erroneously failed to inquire into these revelations regarding claimant's reasons for failing to follow treatment at the hearing, and instead used the claimant's noncompliance to dismiss the medical evidence that supported his claim. *Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7. *See also Lee v.*

*Barnhart*, 117 Fed. Appx. 674, 681 (10th Cir. 2004) ("[T]he ALJ put the shoe on the wrong foot; it was *his* duty to inquire, as part of development of the record, whether [the claimant] could in fact afford treatment and whether any alternative forms of payment were available to [her].") [unpublished opinion].

In addition, the ALJ discussed Dr. Tribbey's medical notes, writing that Dr. Tribbey had stated that "no overt seizure activity had ever been noted." (Tr. 24). However, the ALJ completely failed to discuss Dr. Tribbey's findings, based on a review of claimant's EEG, that the claimant *did* show "some subtle changes in the left parietal and posterior temporal region of the brain, which suggest an area of previous damage and possible epileptic behavior." (Tr. 281). This constitutes improper picking and choosing among the medical evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The ALJ also stated that there was "no record that [the claimant] required emergency room treatment due to a severe seizure event." (Tr. 24). But the record reflects that the claimant *did* receive treatment at Valley View Regional Hospital's emergency room on at least three separate occasions during the relevant time period in the early part of 2008. (Tr. 571, 578, 594). The Commissioner argues that the ALJ

properly rejected Dr. O'Neill's opinion because it was "not relevant to the time period at issue under the Act." However, this amounts to an improper post hoc argument, as the ALJ made no attempt to disregard Dr. O'Neill's opinion on this basis. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Finally, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). The ALJ apparently relied upon non-examining state physicians findings regarding both mental and physical RFC, *i. e.*, the opinions of Dr. Carolyn Goodrich and Dr. Kenneth Wainner. However, he made no attempt to discuss these findings, let alone the weight he gave to those opinions, in the body of the opinion. Further, he made no attempt to determine why those opinions outweighed any of the other opinions of record, including the opinion of Dr. Bayne, who opined that claimant was "unemployable" and assessed his GAF to be

50. *See Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("A GAF score of fifty or less . . . *does* suggest an inability to keep a job.") [emphasis added] [unpublished opinion], *citing Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion]. *See also Berryhill v. Barnhart*, 64 Fed. Appx. 196, 200 (10th Cir. 2003) [unpublished opinion].

Because the ALJ failed to properly analyze the medical evidence of record as discussed above, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma